SECTION 16

**CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS**

**STATE OF LOUISIANA**

DOCKET NO. 23 - 9022                    DIVISION "A"

**OLIVE CATERING SERVICES, LLC D/B/A DEANIE'S ON MAGAZINE**

**VERSUS**

**CERTAIN UNDERWRITERS AT LLOYD'S, LONDON**
**INDIAN HARBOR INSURANCE COMPANY**
**QBE SPECIALTY INSURANCE COMPANY**
**STEADFAST INSURANCE COMPANY**
**GENERAL SECURITY INDEMNITY COMPANY OF ARIZONA**
**UNITED SPECIALTY INSURANCE COMPANY**
**LEXINGTON INSURANCE COMPANY**
**HDI GLOBAL SPECIALTY SE**
**OLD REPUBLIC UNION INSURANCE COMPANY**
**GEOVERA SPECIALTY INSURANCE COMPANY**
**TRANSVERSE SPECIALTY INSURANCE COMPANY**
**THE HARTFORD STEAM BOILER INSPECTIONS AND INSURANCE COMPANY**
**TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA**

**FILED:** _____                    **DEPUTY CLERK**

**HURRICANE IDA**
**PETITION FOR DAMAGES**

The petition of **OLIVE CATERING SERVICES, LLC D/B/A DEANIE'S ON MAGAZINE**, a domestic corporation domiciled in Orleans Parish, State of Louisiana, respectfully represents that:

1.

Made defendants herein are:

A. **CERTAIN UNDERWRITERS AT LLOYD'S, LONDON,** upon information and belief, a foreign insurance company that is authorized to do and doing business in the State of Louisiana.

B. **INDIAN HARBOR INSURANCE COMPANY,** upon information and belief, a foreign insurance company that is authorized to do and doing business in the State of Louisiana.

C. **QBE SPECIALTY INSURANCE COMPANY,** upon information and belief, a foreign insurance company that is authorized to do and doing business in the State of Louisiana.

D. **STEADFAST INSURANCE COMPANY,** upon information and belief, a foreign insurance company that is authorized to do and doing business in the State of Louisiana.

E. **GENERAL SECURITY INDEMNITY COMPANY OF ARIZONA,** upon information and belief, a foreign insurance company that is authorized to do and doing business in the State of Louisiana.

F. **UNITED SPECIALTY INSURANCE COMPANY,** upon information and belief, a foreign insurance company that is authorized to do and doing business in the State of Louisiana.

G. **LEXINGTON INSURANCE COMPANY,** upon information and belief, a foreign insurance company that is authorized to do and doing business in the State of Louisiana.

H. **HDI GLOBAL SPECIALTY SE,** upon information and belief, a foreign insurance company that is authorized to do and doing business in the State of Louisiana.

I. **OLD REPUBLIC UNION INSURANCE COMPANY,** upon information and belief, a foreign insurance company that is authorized to do and doing business in the State of Louisiana.

J. **GEOVERA SPECIALTY INSURANCE COMPANY,** upon information and belief, a foreign insurance company that is authorized to do and doing business in the State of Louisiana.

K. **TRANSVERSE SPECIALTY INSURANCE COMPANY,** upon information and belief, a foreign insurance company that is authorized to do and doing business in the State of Louisiana.

L. **HARTFORD STEAM BOILER INSPECTION AND INSURANCE COMPANY,** upon information and belief, a foreign insurance company that is authorized to do and doing business in the State of Louisiana.

M. **TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA**, upon information and belief, a foreign insurance company that is authorized to do and doing business in the State of Louisiana.

Made defendants herein are truly and justly indebted unto your petitioner for the following reasons to wit:

2.

At all times relevant herein, Petitioner, **OLIVE CATERING SERVICES, LLC D/B/A DEANIE'S ON MAGAZINE**, owned the following property ("Property") and contents located at **2200 MAGAZINE STREET NEW ORLEANS, LA 70130.**

3.

At all times relevant hereto, Defendants provided insurance to **OLIVE CATERING SERVICES, LLC D/B/A DEANIE'S ON MAGAZINE** as follows: **CERTAIN UNDERWRITERS AT LLOYD'S, LONDON (Policy Number AMR-62231-03), INDIAN HARBOR INSURANCE COMPANY (Policy Number AMP7534158-03), QBE SPECIALTY INSURANCE COMPANY (Policy Number MSP-25773-03), STEADFAST INSURANCE COMPANY (Policy Number CPP1061394-03), GENERAL SECURITY INDEMNITY COMPANY OF ARIZONA (Policy Number 10T029659-09387-21-03), UNITED SPECIALTY INSURANCE COMPANY (Policy Number USI-22438-03), LEXINGTON INSURANCE COMPANY (Policy Number LEX-014711980-03), HDI GLOBAL SPECIALTY SE (Policy Number HAN-19245-03), OLD REPUBLIC UNION INSURANCE COMPANY (Policy Number ORAMPR003847-03), GEOVERA SPECIALTY INSURANCE COMPANY (Policy Number GVS-10614-00), TRANSVERSE SPECIALTY INSURANCE COMPANY (Policy Number TSAMPR0000090-00), THE HARTFORD STEAM BOILER INSPECTION AND INSURANCE COMPANY (Policy Number FBP2280613), TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA (Policy Number 105563638),** said policy(ies) was in full force and effect and covered the Property at issue and the contents therein including loss of rents and business income against perils including hurricanes, wind, hail, and/or water. Defendants placed a valuation upon the covered Property and the contents

therein and used this valuation for purposes of determining the premium charge to be made under the Policy at issue.

4.

On or about August 29, 2021, Hurricane Ida struck Southeast Louisiana as one of the most powerful storms in U.S. history. As detailed by the U.S. National Weather Service, "Hurricane Ida made landfall as Category 4 Hurricane in Lower Lafourche Parish near Port Fourchon with maximum sustained wind speeds of 150 mph". A Category 4 storm with unprecedented winds, Ida caused major damage to buildings throughout Southeast Louisiana, including the greater New Orleans area and surrounding parishes throughout this District. "The widespread damage spread well inland across Southeast Louisiana and Southern Mississippi as Hurricane Ida remained at hurricane strength into southwest Mississippi near McComb".

5.

On or about August 29, 2021, Hurricane Ida damaged the exterior, interior, and roof of the Property, allowing water to infiltrate the interior as a direct result of that damage and causing significant damage to and throughout the Property ("the Loss" or "Property Damage") which was covered under the Policy.

6.

The Property and contents therein were significantly damaged by and suffered a diminution in value because of Hurricane Ida. These significant Hurricane Ida damages to the Property (including the contents therein as well as lost rents and business income) occurred prior to any purported damage to the Property (or contents therein) by any non-covered peril, including any type of damage purportedly excluded by the policy.

7.

**OLIVE CATERING SERVICES, LLC D/B/A DEANIE'S ON MAGAZINE,** property was inspected by its insurers, **CERTAIN UNDERWRITERS AT LLOYD'S, LONDON, INDIAN HARBOR INSURANCE COMPANY, QBE SPECIALTY INSURANCE COMPANY, STEADFAST INSURANCE COMPANY, GENERAL SECURITY INDEMNITY COMPANY OF ARIZONA, UNITED SPECIALTY INSURANCE COMPANY, LEXINGTON INSURANCE COMPANY, HDI GLOBAL SPECIALTY SE,**

**OLD REPUBLIC UNION INSURANCE COMPNAY, GEOVERA SPECIALTY INSURANCE COMPANY, TRANSVERSE SPECIALTY INSURANCE COMPANY, THE HARTFORD STEAM BOILER INSPECTION AND INSURANCE COMPANY, TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA** Its claim was assigned a claim number ("the Claim" or "Insurance Claim").

8.

Upon notification of the Loss, Defendants inspected the Property, and provided an estimate on the Claim. This estimate, however, grossly underreported the Property Damage.

9.

Defendants' inspection of the Property constituted satisfactory proof of loss, as that term is used in conjunction with Louisiana's bad faith statutes, LA Rev. Stat. § 22:1892 and §22:1973.

10.

Defendants' adjustment of the Claim was unreasonably low, unrealistic, and failed to provide the opportunity to properly conduct the needed repairs to the Property caused by Hurricane Ida.

11.

As a result of Defendants refusing and/or failing to adjust the Claim fairly, undersigned counsel was hired, and an expert adjuster was retained to inspect the Property and to document and estimate Property Damage and/or the Claim.

12.

After Defendants' inspection of the Property, Plaintiff's expert adjuster inspected the Property and created a report (the "Expert Report") documenting and detailing that the Property had been damaged by Hurricane Ida and those amounts were required to be paid by Defendants for repair, damages and/or reimbursement.

13.

Despite receiving this satisfactory proof of loss, Defendants have yet to tender adequate insurance proceeds.

14.

Plaintiff has attempted to recover the full value of their covered damages and/or insurance proceeds due from Defendants to no avail.

15.

Defendants' failure to comply with the terms of its own Policy caused and continues to cause significant delay to the repair of the Property and additional cost, mental pain and anguish, additional living expenses, rents, lost business income and general and/or special damages to Plaintiffs.

16.

Upon information and belief, relative to the Property Damage and/or Claim at issue, Defendants acted intentionally and/or negligently when it:

    A.  Failed to timely tender proceeds due after having received satisfactory proof of loss;

    B.  Misrepresented the terms and conditions of the Policy at issue;

    C.  Conducted the investigation and claims handling in bad faith;

    D.  Manipulated and/or set its pricing software to artificially suppress the cost of repairs below market value;

    E.  Failed to adequately pay for losses as required by the Policy, and/or

    F.  Failed to include adequate overhead and profit in its estimates of damages.

17.

Plaintiff has incurred additional expenses and/or delays in making repairs because Defendants failed to timely pay for losses due under the Policy and/or for the Claim at issue.

18.

Plaintiff has incurred professional expenses, including expert and attorney's fees, to prove that Defendants wrongfully failed to adequately/timely pay on the Claim at issue.

19.

Plaintiff has sustained and continue to sustain mental anguish and inconvenience because Defendants failed to timely pay for losses due under the Policy and/or for the Claim at issue.

20.

Plaintiff has incurred and will continue to incur loss of rents and business income as a result of the damages caused to the Property by Hurricane Ida, including those lost rents and business income that will be incurred during additional repair of the Property.

## **BREACH OF INSURANCE CONTRACT**

21.

All allegations contained in this Petition are hereby adopted and re-alleged.

22.

Despite having adequate proof of loss, Defendants failed to timely tender adequate funds under the Policy.

23.

At all material times herein, an insurance contract, the Policy, existed between Plaintiff and Defendants, which provided coverage for the Property Damage and/or the Hurricane Ida Claim at issue herein.

24.

Upon information and belief, Defendants breached the Policy and/or insurance contract by intentionally and/or negligently:

    A. Failing to timely tender proceeds due after having received satisfactory proof of loss;

    B. Misrepresenting the terms and conditions of the Policy at issue;

    C. Conducting the investigation and claims handling in bad faith;

    D. Manipulating and/or setting its pricing software to artificially suppress the cost of repairs below market value;

    E. Failing to adequately pay for losses as required by the Policy, and/or

    F. Failing to include adequate overhead and profit in its estimates of damages.

25.

Plaintiff has suffered and continue to suffer general, special and/or consequential damages because of Defendants' breaches of the insurance contract.

## BAD FAITH

### 26.

All allegations contained in this Petition are hereby adopted and re-alleged.

### 27.

The actions and/or inactions of Defendants in failing to adequately compensate Plaintiff for the covered losses under the Policy were arbitrary, capricious, and without probable cause as those terms are used in conjunction with LA Rev. Stat. §§ 22:1892 and 22:1973, making Defendants liable for statutory bad faith penalties.

### 28.

Under LA Rev. Stat. § 22:1973, an insurer owes a duty of good faith and fair dealing to an insured and has an affirmative duty to adjust claims fairly and promptly; failing to pay a claim in a manner arbitrary, capricious or without probable cause is in violation of LA Rev. Stat. § 22:1973.

### 29.

"[F]ailing to pay the amount of any claim due any person insured by the contract within sixty days after receipt of satisfactory proof of loss from the claimant when such failure is arbitrary, capricious, or without probable cause" is considered "bad faith" and is in violation of LA Rev. Stat. § 22:1973.

### 30.

LA Rev. Stat. § 22:1892 imposes bad faith penalties on an insurer who fail to adequately pay claims following satisfactory proof of loss within thirty (30) days, or fails to make a written offer to settle any property damage claim within thirty (30) days after receipt of satisfactory proofs of loss of that claim.

### 31.

Defendants are in violation of LA Rev. Stat. § 22:1973 and §22:1892 for failing to provide Plaintiff adequate payment in connection with the Property Damage and/or the Claim, despite having received satisfactory proof of loss following its own inspection(s) of the Property, and/or after Plaintiff provided expert documentation of the Property Damage and/or the Claim. Moreover,

Defendants' failure to timely tender adequate payment was unjustified, and without reasonable or probable cause or excuse.

32.

Defendants are in violation of LA Rev. Stat. §§ 22:1973 and 22:1892 for failing to make a written offer to settle the Property Damage and/or the Claim within thirty (30) days after receipt of satisfactory proofs of loss of the Property Damage and/or the Claim.

33.

Upon information and belief, relative to the Property Damage and/or Claim at issue, Defendants acted in bad faith by arbitrarily and capriciously:

A. Failing to timely tender proceeds due after having received satisfactory proof of loss;

B. Misrepresenting the terms and conditions of the Policy at issue;

C. Conducting the investigation and claims handling in bad faith;

D. Manipulating and/or setting its pricing software to artificially suppress the cost of repairs below market value;

E. Failing to adequately and/or timely pay insurance proceeds as required by the Policy and the relevant statute;

F. Failing to make a written offer to settle within thirty (30) days after receipt of satisfactory proofs of loss of the Claim; and/or,

G. Failing to include adequate overhead and profit in its estimates of damages.

34.

Upon information and belief, further evidence of Defendants' bad faith will be revealed through the discovery process.

35.

Plaintiff has suffered and continue to suffer general, special and/or consequential damages because of Defendants bad faith.

## DAMAGES

36.

All allegations contained in this Petition are hereby adopted and re-alleged.

37.

Defendants are liable to Plaintiff, relative to the Property Damage and/or Claim at issue, under the following legal theories:

A. Breach of contract;

B. Bad faith and/or negligent claims adjusting practices, including but not limited to failing to adequately adjust the Property Damage and/or the Claim, misrepresentation of the terms of the applicable insurance Policy, purposeful and/or negligent under-scoping of damages leading to a failure to pay the relevant claims, purposeful and/or negligent price manipulation leading to a failure to pay the relevant claims, failure to pay timely for covered damages Defendants knew, or should have known existed at the time of the original adjustment/inspection as well as at the time of Defendants' receipt of the Expert Report, failing to timely tender adequate supplemental payment(s), etc., leading to various general, special and/or consequential damages, including but not limited to delayed and/or additional repair costs, mental anguish, inconvenience, and the incurrence of professional and/or expert fees; and/or

C. Any and all other legal theories of recovery that become apparent during the discovery process and proven at the trial of this matter.

38.

As a result of Defendants breaches of contract, bad faith claims adjusting, and other bad acts, Plaintiff has incurred and/or sustained the following, non-exclusive damages:

A. Diminution of the value of the Property;

B. Underpayment and/or delayed payment of covered damages/repair costs;

C. Actual repair costs, temporary repair costs, as well as increased repair costs;

D. Loss of use and/or additional living expenses;

E.   Lost rent, revenue and business income;

F.   Penalties delineated in LA Rev. Stat. §§ 22:1892 and 22:1973;

G.   Mental anguish, suffering, and/or inconvenience;

H.   Attorneys' fees, other professional fees, and litigation costs associated with the bringing of this action;

I.   Other general, special and/or consequential damages; and,

J.   Any and all other damages that are shown through discovery and/or proven at the trial of this matter.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, **OLIVE CATERING SERVICES, LLC D/B/A DEANIE'S ON MAGAZINE** prays that the defendants, **CERTAIN UNDERWRITERS AT LLOYD'S, LONDON, INDIAN HARBOR INSURANCE COMPANY, QBE SPECIALTY INSURANCE COMPANY, STEADFAST INSURANCE COMPANY, GENERAL SECURITY INDEMNITY COMPANY OF ARIZONA, UNITED SPECIALTY INSURANCE COMPANY, LEXINGTON INSURANCE COMPANY, HDI GLOBAL SPECIALTY SE, OLD REPUBLIC UNION INSURANCE COMPANY, GEOVERA SPECIALTY INSURANCE COMPANY, TRANSVERSE SPECIALTY INSURANCE COMPANY, THE HARTFORD STEAM BOILER INSPECTION AND INSURANCE COMPANY, TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA,** be served with a copy of this petition and that after all legal delays it be required to answer same and after all proceedings, there be a judgment in favor of your Plaintiff, **OLIVE CATERING SERVICES, LLC D/B/A DEANIE'S ON MAGAZINE,** for all amounts commensurate with their damages, in such sums the Court deems just, together with legal interest, costs, and all general and equitable relief allowed. Further, Plaintiff prays for relief and judgment against the Defendants as follows:

A.   Compensatory, general and/or contractual damages;

B.   Consequential and/or special damages, including but not limited to those incurred as a result of Defendants' bad faith;

C. Penalties as a result of Defendants' bad faith;

D. Attorneys' fees as a result of Defendants' bad faith;

E. Prejudgment interest at the highest lawful rate allowed by law;

F. Interest on the judgment at the highest legal rate from the date of judgment until

collected;

G. Lost rents, revenue and business income;

H. Additional living expenses;

I. Mental anguish, suffering, and inconvenience;

J. All expenses and costs of this action; and

K. Such further relief as this Court deems necessary, just, and proper.

Respectfully Submitted:

*Alvendia, Kelly & Demarest, LLC*

**RODERICK "RICO" ALVENDIA, 25554**
**J. BART KELLY III, 24488**
**JEANNE K. DEMAREST, 23032**
**KURT A. OFFNER, 28176**
**JENNIFER KUECHMANN, 36886**
**CASSIE P. GAILMOR, 33319**
909 Poydras Street, Suite 1625
New Orleans, Louisiana 70112
Telephone: (504) 200-0000
Facsimile: (504) 200-0001
Email: jeanne@akdlalaw.com
rico@akdlalaw.com
bart@akdlalaw.com
kurt@akdlalaw.com
jennifer@akdlalaw.com
cassie@akdlalaw.com

**ATTORNEYS FOR PLAINTIFFS**

**PLEASE SERVE:**

**CERTAIN UNDERWRITERS AT LLOYD'S, LONDON**
Through Its Registered Agent for Service of Process
LOUISIANA SECRETARY OF STATE
8585 Archives Avenue
Baton Rouge, LA 70809

**CERTAIN UNDERWRITERS AT LLOYD'S, LONDON**
(Via Long Arm)
Through Its Registered Agent for Service of Process

LLOYD'S AMERICA, INC.
280 Park Avenue, East Tower, 25th Floor
New York, NY 10017

**INDIAN HARBOR INSURANCE COMPANY**
Through Its Services Registered Agent for Services of Process
LOUISIANA SECRETARY OF STATE
8585 Archives Avenue
Baton Rouge, LA 70809

**INDIAN HARBOR INSURANCE COMPANY**
(Via Long Arm)
Through Its Registered Agent for Service of Process
SARAH MIMS, GENERAL COUNSEL
505 Eagleview Boulevard, Suite 100
Exton, PA 19341-1120

**QBE SPECIALTY INSURANCE COMPANY**
Through Its Registered Agent for Service of Process
LOUISIANA SECRETARY OF STATE
8585 Archives Avenue
Baton Rouge, LA 70809

**QBE SPECIALTY INSURANCE COMPANY**
Through Its Registered Agent for Service of Process
CT CORPORATION SYSTEM
3867 Plaza Tower Drive
Baton Rouge, LA 70816

**STEADFAST INSURANCE COMPANY**
Through Its Registered Agent for Service of Process
LOUISIANA SECRETARY OF STATE
8585 Archives Avenue
Baton Rouge, LA 70809

**STEADFAST INSURANCE COMPANY**
(Via Long Arm)
Through Its Registered Agent for Service of Process
GENERAL COUNSEL, LAW DEPARTMENT, STEADFAST INSURANCE COMPANY
1299 Zurich Way
Schaumburg, IL 60196

**GENERAL SECURITY INDEMNITY COMPANY OF ARIZONA**
Through Its Registered Agent for Service of Process
LOUISIANA SECRETARY OF STATE
8585 Archives Avenue
Baton Rouge, LA 70809

**GENERAL SECURITY INDEMNITY COMPANY OF ARIZONA**
(Via Long Arm)
Through Its Registered Agent for Service of Process
RODOLPHE HERVE, CEO
28 Liberty Street, Suite 5400
New York, NY 10005

**GENERAL SECURITY INDEMNITY COMPANY OF ARIZONA**

(Via Long Arm)
Through Its Registered Agent for Service of Process
MAXINE VERNE, GENERAL LEGAL COUNSEL
28 Liberty Street, Suite 5400
New York, NY 10005

**UNITED SPECIALTY INSURANCE COMPANY**
Through Its Registered Agent for Service of Process
LOUISIANA SECRETARY OF STATE
8585 Archives Avenue
Baton Rouge, LA 70809

**UNITED SPECIALTY INSURANCE COMPANY**
(Via Long Arm)
Through Its Registered Agent for Service of Process
TERRY L. LEDBETTER
1900 L. Don Dodson Drive
Bedford, TX 76021

**LEXINGTON INSURANCE COMPANY**
Through Its Registered Agent for Service of Process
LOUISIANA SECRETARY OF STATE
8585 Archives Avenue
Baton Rouge, LA 70809

**LEXINGTON INSURANCE COMPANY**
(Via Long Arm)
Through Its Registered Agent for Service of Process
DIVISION EXECUTIVE, COMMERCIAL PROPERTY
99 High Street
Boston, MA 02110

**LEXINGTON INSURANCE COMPANY**
(Via Long Arm)
Through Its Registered Agent for Services of Process
AIG PROPERTY CASUALTY U.S.
175 Water Street – 18th Floor
New York, NY 10038

**LEXINGTON INSURANCE COMPANY**
(Via Long Arm)
Through Its Registered Agent for Service of Process
LEXINGTON INSURANCE COMPANY
99 High Street
Boston, MA 02110

**HDI GLOBAL SPECIALTY SE**
Through Its Registered Agent for Service of Process
LOUISIANA SECRETARY OF STATE
8585 Archives Avenue
Baton Rouge, LA 70809

**HDI GLOBAL SPECIALTY SE**
(Via Long Arm)
Through Its Registered Agent for Service of Process

MENDES & MOUNT, LLP
750 Seventh Avenue
New York, NY 10019

**OLD REPUBLIC UNION INSURANCE COMPANY**
Through Its Registered Agent for Service of Process
LOUISIANA SECRETARY OF STATE
8585 Archives Avenue
Baton Rouge, LA 70809

**OLD REPUBLIC UNION INSURANCE COMPANY**
(Via Long Arm)
Through Its Registered Agent for Service of Process
OLD REPUBLIC SPECIALTY INSURANCE UNDERWRITERS, INC.
Attn: Office of General Counsel
370 North Michigan Avenue
Chicago, IL 60601

**GEOVERA SPECIALTY INSURANCE COMPANY**
Through Its Registered Agent for Service of Process
LOUISIANA SECRETARY OF STATE
8585 Archives Avenue
Baton Rouge, LA 70809

**GEOVERA SPECIALTY INSURANCE COMPANY**
(Via Long Arm)
Through Its Registered Agent for Service of Process
GEOVERA HOLDINGS, INC.
Attn: Robert Hagedorn, General Counsel
1455 Oliver Road
Fairfield, CA 94534

**TRANSVERSE SPECIALTY INSURANCE COMPANY**
Through Its Registered Agent for Service of Process
LOUISIANA SECRETARY OF STATE
8585 Archives Avenue
Baton Rouge, LA 70809

**TRANSVERSE SPECIALTY INSURANCE COMPANY**
(Via Long Arm)
Through Its Registered Agent for Service of Process
CORPORATE SECRETARY
155 Village Boulevard, Suite 205
Princeton, NJ 08540

**THE HARTFORD STEAM BOILER INSPECTION AND INSURANCE COMPANY**
Through Its Registered Agent for Service of Process
LOUISIANA SECRETARY OF STATE
8585 Archives Avenue
Baton Rouge, LA 70809

**TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA**
Through Its Registered Agent for Service of Process
LOUISIANA SECRETARY OF STATE
8585 Archives Avenue
Baton Rouge, LA 70809

IN RE: HURRICANE IDA CLAIMS



STATE OF LOUISIANA

PARISH OF ORLEANS

CIVIL DISTRICT COURT

DEPUTY CLERK

FILED

2024 APR 21  AII II: 32

CIVIL
DISTRICT COURT

2022-03492

SECTION 15

## CASE MANAGEMENT ORDER
### REGARDING CERTAIN PROPERTY DAMAGE SUITS ARISING FROM HURRICANE IDA

On August 29, 2021, Hurricane Ida came ashore near Port Fourchon, Louisiana and left destruction throughout south Louisiana as a major Category 4 Hurricane.[1] Major Hurricane-force winds, with gusts in excess of 192 mph inflicted catastrophic damage throughout south Louisiana and hurricane force winds impacted this Court's jurisdiction.[2] The causes of action arising therefrom may sometimes be referred to as "Hurricane Cases."[3]

In the aftermath of these catastrophic natural disasters, this Court recognizes the likelihood of a high volume of insurance coverage-related litigation linked to the Hurricane. In Act 318 of the 2021 Regular Session the Legislature of Louisiana amended the laws expanding judicial authority related to special masters and mandatory mediation in cases stemming from certain major disasters ("Act 318").[4]

Act 318 authorizes this court to issue this CMO, this Court finds it warranted to best accommodate the adjudication of Hurricane cases in this Court.[5] Accordingly, this Court's aim continues to be the just and expedient resolution of these related matters, in spite of the increased strain on the Court's resources, and with the primary goal of enabling the New Orleans community to move forward with crucial recovery efforts, in the aftermath of the Hurricane and the ongoing Coronavirus pandemic.

**IT IS HEREBY ORDERED** that this Case Management Order shall be immediately

---

[1] https://www.theadvocate.com/baton_rouge/news/article_0ce1de86-0a90-11ec-827e-6342102b8d5d.html
[2] https://www.theadvocate.com/baton_rouge/news/business/article_10bb5488-11d0-11ec-82c3-e3dd67be12ad.html   https://www.nbcnews.com/news/us-news/live-blog/hurricane-ida-live-updates-8-30-n1277989/ncrd1278026#liveBlogHeader
[3] All causes of action concerning damage related to Hurricane Ida is subject to this Order, including causes of action where the third-party demand or cross claim is a claim against an insurer by an insured due to damage from the Hurricane.
[4] Hurricane Ida qualifies pursuant to R.S. 13:4165(F)(1). A major disaster declaration was made by the President for Orleans Parish in Hurricane Ida under FEMA Release No. HQ-21-181. Orleans Parish qualified for individual assistance for the Hurricane (FEMA designation DR-4611-LA).
[5] Hurricane Ida ties Hurricane Laura for the strongest hurricane to hit Louisiana and the fifth strongest Hurricane to hit the United States. Act 318 was enacted in the aftermath of Hurricane Laura and this CMO is modeled extensively on the CMO successfully adopted by the 14th Judicial District Court following Hurricane Laura.

1

VERIFIED

04/21/2022

applicable to all Hurricane Cases currently pending or hereafter filed in this Court (Civil District Court for the Parish of Orleans).

## SECTION 1. DISASTER PROTOCOLS FOR INITIAL DISCLOSURES

The Court has reviewed the Disaster Litigation Initial Discovery Disaster Protocols adopted by the United States District Court for the Western District of Louisiana, applicable to all Hurricane Cases[6] and the nearly identical Disaster Protocols implemented by the U.S. District Court for the Southern District of Texas following Hurricane Harvey.[7] These Disaster Protocols call for prompt sharing of specific information to promote uniformity, to facilitate prompt evaluation of each case, to foster communication between the parties, and to facilitate an expedited mediation procedure.

Accordingly, this Court has adopted the Disaster Protocols attached hereto as Exhibit "A" in the Disaster Protocols Order and makes them applicable to all Hurricane cases filed in this Court. Additionally, **IT IS HEREBY ORDERED** that there shall be an automatic extension of time to Answer in every Hurricane case until the 30th day after service of the plaintiff's petition. No further extensions of time shall be granted except in exigent circumstances.

Additionally, **IT IS HEREBY ORDERED** that the disclosures and exchange of information required by the Disaster Protocols Order shall be due 45 days from the date that defendant files responsive pleadings. This deadline may sometimes hereinafter be referred to as the "Disclosure Deadline". Even if the parties agree to further extension of time to file responsive pleadings, the Disclosure Deadline shall be no more than 90 days from the service of the petition unless the extension of the Disclosure Deadline is expressly extended by the written consent of all parties or pursuant to an express Order of this Court to extend it.

**IT IS FURTHER ORDERED** that each party shall supplement their Initial Disclosures at least twenty-one days prior to any scheduled mediation pursuant to the CMO.[8]

**IT IS FURTHER ORDERED** that all other discovery is stayed until certification of the completion of the SSP. However, the Special Master may authorize limited formal

---

[6] https://www.lawd.uscourts.gov/sites/lawd/files/UPLOADS/Hurricane_Laura_Delta_CMO_1_Att_A_Discovery_Protocols.062121.tzd_0.pdf
[7] *United States District Court for the Southern District of Texas*, Disaster Litigation Initial Discovery Protocols, *available at* https://www.txs.uscourts.gov/sites/txs/files/Disaster%20FINAL%20Web%20version.pdf
[8] If the Special Master finds a production under the Disaster Disclosures too voluminous or disorganized to be useful for the SSP, he may require that the Disaster Disclosures be bates numbered and organized with a Table of Contents.

discovery during the SSP in extraordinary circumstances.[9]

## SECTION 2. PRIVILEGE

Documents for which a privilege may properly be asserted include communications that reflect the mental impressions, conclusions, opinions, or theories of an attorney.[10] However, as recognized by federal courts concerning hurricane cases "Documents routinely prepared in the ordinary course of business, including but not limited to adjusters' reports, and other expert analyses, including draft reports, are not privileged and should be produced."[11]

Therefore, **IT IS FURTHER ORDERED** that any party withholding disclosure of any information or documents, where said disclosure is required pursuant to the Disaster Protocols, shall produce a privilege log to opposing counsel on or before the Disclosure Deadline. This privilege log shall detail all information or documents that it declined to produce on the basis of that the material is privileged. The log should include: the author(s) of the document, the recipient(s) of the document (including direct recipients and recipients copied), indication (e.g., with an asterisk) of which individual(s) (authors and recipients) are attorneys (or paralegals or other legal staff carrying out a legal function for an attorney), the date of the document, subject line of the document, title of the document, the nature of any privilege(s) asserted, and a description of the document (over which a privilege is asserted) in a manner that, without revealing information itself privileged or protected, will enable the Special Masters and/or the Court to assess the claim.

Any dispute concerning privileged items shall be referred to the Special Master. If a motion to compel related to the privilege log is filed, or if any other privilege dispute is raised with the Special Master, the disputed items shall be provided to the Special Master *in camera* within ten days. The Special Master or his designated deputy shall provide all parties with a report and recommendation concerning the claimed privilege.

If neither party opposes the report and recommendation within seven days of its receipt then the Court may issue an Order confirming it. If either party opposes the report and

---

[9] The parties are encouraged to make requests for limited discovery in complex cases when necessary to effectively participate in the SSP outlined herein.
[10] La. C.C.P. art. 1424(A)
[11] United States District Court for the Western District of Louisiana, *In Re Hurricane Laura and Delta Cases: Case Management Order No. 1*, p. 3, *available at* https://www.lawd.uscourts.gov/sites/lawd/files/UPLOADS/Hurricane_Laura_Delta_CMO_1.012221.fzd. pdf
United States District Court for the Eastern District of New York, *In Re Hurricane Sandy Cases: Case Management Order No. 1*, p. 10, *available at* https://img.nyed.uscourts.gov/files/general-orders/14mc41cmo01.pdf.

recommendation within seven days of its receipt then the report shall be transmitted to the Court by the Special Master together with the *in camera documents*. The opposing party may file a memorandum concerning the report and recommendation within seven days of receiving the report, and any other party may file a response within five days of the filing of the opposition.

## SECTION 3. SPECIAL MASTER AND APPOINTED NEUTRALS

Considering the foregoing reasons supplied by the Court in the introduction *infra*, the Court finds that exceptional circumstances exist which warrant the appointment of a Special Master to assist with the efficient and fair administration of all Hurricane Cases. Pursuant to the Court's inherent judicial power and its authority under La. R.S. 13:4165, *et seq*, it is ordered that **THE COURT HEREBY APPOINTS E. JOHN LITCHFIELD, ESQ. AND CADE R. COLE, ESQ.** as the Special Masters for Hurricane Cases in the Orleans Civil District Court.

As part of their appointment, the Court mandates that the Special Masters shall proceed with all reasonable diligence and shall exercise their respective rights and responsibilities to direct the Streamlined Settlement Process as provided in this Order.

**IT IS FURTHER ORDERED** that the Neutrals, referenced in Section 4(II)(B), *supra*, are hereby appointed and shall proceed with all reasonable diligence and shall exercise their rights and responsibilities under the Streamlined Settlement Process ("SSP") as the Special Master may direct.

### I.     *The Special Masters*

The Special Masters shall administer, coordinate, and preside over the SSP. This authority includes the power to order parties and/or party representatives with full power of settlement to submit briefing, engage in discovery, and attend settlement conferences. The Special Masters may enter any other order to effectuate the provisions of the SSP, subject to the review and control of the Court.

### II.    *Compensation of Appointed Neutrals*

The Special Masters and all other appointed neutrals under the SSP (the "Appointed Neutrals") shall be compensated in the amount of:

A. $400 per hour;

B. $280 per case for the Special Masters for administrative expenses in administering, scheduling, organizing, and coordinating the Streamlined Settlement Process for each case amongst the parties as well as with the Appointed Neutrals; and

C. all actual expenses of the Appointed Neutrals, including but not limited to travel, meeting rooms, telephone, and electronic audio or video conference

means.

Unless otherwise directed by mutual agreement of the parties or as otherwise directed by the Special Masters, all of the above fees and expenses shall be paid twenty-five percent (25%) by the plaintiff(s) and seventy-five (75%) by the defense(s).[12] If the claim settles for $25,000 or less, then 100% of the above fees and expenses shall be paid by the defense(s).

**IT IS FURTHER ORDERED** that $70 of the administrative fee provided for in Section II(B) shall be added to the cost of filing the petition, collected by the clerk of court, and remitted monthly to the Special Masters; and that $210 of the administrative fee provided for in Section II(B) shall be added to the cost of the first notice or filing by the defendant, collected by the clerk of court, and remitted monthly to the Special Masters.

## III.    Role of Appointed Neutrals

A. The Special Masters and Appointed Neutrals may communicate *ex parte* with the Court when deemed appropriate by the Special Masters, at the Special Masters' discretion, without providing notice to the parties, including communication certifying that the parties have complied with the requirements of the SSP.

B. The Special Masters and Appointed Neutrals may initiate contact and communicate with counsel for any party as he or she deems appropriate with respect to the efficient administration and management of the SSP.

C. The Special Masters and Appointed Neutrals, the parties, and those assisting the foregoing shall be bound by the confidentiality of the settlement discussions.

D. The Special Masters may designate any of the Appointed Neutrals to act as his deputy from time to time and to perform any duties of the Special Masters.

E. If an Appointed Neutral reports that a case did not settle due to a party's failure to comply with its obligations under the Disaster Protocols, including the obligation to supplement the Disaster Disclosures at least twenty-one (21) days prior to the mediation, the Special Master may order another mediation and may assess the full cost of the first mediation against the party in violation.

## IV.    Notice to the Special Masters.

Any party to a Hurricane Case may file a motion with the assigned District Judge requesting an opt out from the SSP only for good cause shown within the applicable deadline (*see* Section 4 below). **IT IS FURTHER ORDERED** that any party filing an opt out motion shall copy the Special Masters, and that the parties shall provide notice of the Court's Order on the motion to opt out to the Special Masters whether the motion to opt out is granted or denied.

**IT IS FURTHER ORDERED** that counsel for any party to a Hurricane Case that has been provided a copy of this Order shall be required to provide email notice to the Special Masters of the initial pleadings and all subsequent filings in any Hurricane Case (knowledge of this provision is presumed where a counsel for the party has been provided a copy of this Order for a case for that party or any other party). The Special Masters shall send an Initial Informational Package on the SSP to all parties and/or counsel of record for Hurricane Cases subject to the SSP.

---

[12] In instances where an insurer of an insured has filed suit against the insured concerning a Hurricane case the insured shall be considered the plaintiff for the purposes of the cost split under this order and the insurer shall be considered the defendant. It is generally customary in the event of settlement that a condition of settlement be that the insurer pays court costs and costs of the SSP/mediation.

# SECTION 4. STREAMLINED SETTLEMENT PROCESS ("SSP")

Within 15 days of the filing of the defendant's responsive pleading (or within 15 days of the receipt of a copy of this Order by the defendant or its counsel, including by electronic or other means -- whichever is later), either party may file a motion to opt out of this Streamlined Settlement Process for good cause shown. This motion may be decided on the briefs without hearing. Unless the Court authorizes an opt out, then the parties shall participate in the two-staged Streamlined Settlement Process, which is described as follows:

## I.   *First Stage: Settlement Conference*

Within 45 days of the Disclosure Deadline in all Hurricane Cases, all parties shall conduct an informal settlement conference ("ISC") among all parties and their counsel. Within 15 days of the Disclosure Deadline all counsel shall meet to confer and discuss a mutually convenient time, date, and manner for the conference. In light of the COVID-19 pandemic as well as the desire to resolve the Hurricane Cases as expeditiously as possible, settlement conferences should be conducted, where possible, by phone or audiovisual communication, including but not limited to Zoom, Skype, or similar platforms.

Counsel for each plaintiff and for each defendant must have full authority to resolve the case from their clients, who shall be readily available by telephone if circumstances for the ISC require assistance.

The ISC shall include a particularized demand from the plaintiff that is itemized by each claimed policy coverage category then known to be remaining in dispute and/or any existing demand for extra-contractual damages that are then claimed to be incurred. The demand shall be submitted by email to the opposing counsel on the form attached as Exhibit "C" at least 72 hours prior to the scheduled ISC.

The attorney for the insurer will conduct a call prior to the ISC with the relevant client representative to ensure the client representative has reviewed the ISC demand. The client representative will inform their counsel concerning additional information requested to evaluate the claim, and their counsel shall convey that to opposing counsel at the ISC or in writing. The insurer shall submit by email to the opposing counsel an itemization of the prior payments awarded by coverage category on the form attached as Exhibit "D" at least 48 hours prior to the scheduled ISC.

The defendant shall respond at the ISC to briefly detail why it does not agree with the demand by category. The plaintiff may request that this response be reduced to writing, and if requested it shall be answered within 15 days of the ISC.

All ISC communications shall be covered by mediation confidentiality. The Special Masters may order any particular modifications in this protocol for specific cases, parties, or attorneys.

## II.   *Second Stage: Mediation*

Cases that do not resolve during the initial settlement conference shall be set for a formal mediation. The parties shall provide the Special Masters written notice (including by email and preferably jointly) of completion of the First Stage along with a request for mediation. The Special Masters may assign a neutral within 60 days of the Disclosure Deadline even if neither party submits the written notice. The Special Masters shall then assign each Hurricane Case to an Assigned Neutral, and it is the goal that Assigned Neutrals complete mediation within 90 days of appointment. The Special Masters (or Appointed Neutral for the case) may set a scheduling conference, or communicate with counsel about availability through other means, but shall seek to

schedule the mediations in an expeditious manner at mutually convenient times and dates for all parties. In the event a counsel provides an insufficient number of available dates the Special Masters may authorize an extension of the SSP period for that case or may require mediation on a date selected by the Special Masters, including on a weekend day.

### A.    Conduct of Mediation

After scheduling of an agreed mediation, counsel for each party shall submit confidential statements solely to the appointed neutral. The appointed neutral shall determine, after conferring with the parties, on the length of the confidential mediation statements and the permissible number of exhibits attached thereto.

Plaintiff(s) shall be present in-person along with counsel (subject to accommodations approved by the case's Appointed Neutral). Defense counsel shall also attend in-person. A representative from defendant(s) is encouraged to attend, but unless otherwise directed by the Special Masters the defendant(s) representative shall not be required to attend if counsel for the defendant has full authority to resolve the case. In addition, a representative of the defendant shall be readily available by telephone or video communication, if circumstances for that particular mediation require assistance.

To the extent agreed by the parties and the case's Appointed Neutral, this mediation conference may be conducted by phone or other means of electronic audio or video communication, including but not limited to Zoom, Skype, or similar platforms.

As part of this Streamlined Settlement Process, the attendees may be invited to each make opening statements but there shall be no live witness testimony.

### B.  List of Neutrals

The Court hereby initially designates and appoints the following individuals as "neutrals" (mediators / appointed neutrals) for the SSP:

The Special Masters and any other person qualified pursuant to R.S. 13:4165(F)(5) that is designated by the Special Masters after consultation with the Court (including those identified in the attached list).

### C.  Neutral Training

The Special Masters may undertake to provide special training to the neutrals, including coordinating participation in training prepared for the Streamlined Settlement Process. The Special Masters may form a plaintiffs' liaison committee and a defense liaison committee or may coordinate with any related Federal Court liaison committees for Hurricane Cases. If formed, the Special Masters may solicit input and responses concerning commonly occurring legal issues that the liaison committees, from experience, believe may arise in a large number of these cases, along with relevant case law or other authority addressing these issues. While the ultimate determination of any such common issue may well be fact driven, and the outcome of any legal issue will be determined by the Court, the Special Masters may seek this information in order to educate and fully prepare the appointed neutrals with the hope of expediting the settlement process. The Special Masters may facilitate discussions by and among the appointed neutrals to promote, to the extent possible, consistency in the resolution of cases.

### III.  *Extensions of Time*

Upon a joint request by the parties, or for other good cause shown, the Special

Masters may modify any deadline specified in this Order.

## SECTION 5. COURT APPOINTED UMPIRES REQUIRED UNDER POLICIES

If an insurance policy implicated in a Hurricane Case provides for court appointment of a neutral or third appraiser for valuation disputes (hereinafter referred to as an "Umpire"), any request for the appointment by this Court of an Umpire shall only occur if the parties have been unable to agree on their own.

Any request for the appointment by the Court of an Umpire shall be made in writing no later than the deadline for filing of the defendant's responsive pleading. Any motion or request for this Court's appointment of an Umpire shall be submitted to the Special Masters via email at HurricaneIda@colelaw.us and jlitchfield@berriganlaw.net . This deadline may be extended by a Special Master in exceptional circumstances for good cause.

If a requesting party is seeking court appointment of an Umpire and no case is otherwise filed or pending before this Court (an "Umpire Only Filing"), then the parties shall follow the same procedures.

An Insurer is required to provide written notice of the request to any known counsel for the Insured (or directly to an unrepresented Insured). An Insured is required to provide written notice of the request to any known counsel of Insurer (if any) or alternatively to the Insurer's primary point of contact on the claim with Insured. The appraisers previously selected by each party shall also be provided notice, and their contact information (phone and email address) shall be provided in the request for appointment of an Umpire.

A written report and recommendation concerning the Umpire's appointment shall be issued to the parties and shall be deemed applicable to the parties in the same manner as if made by an order of the Court unless the report and recommendation is overturned by the assigned District Judge for good cause following a motion opposing the report and recommendation filed within seven days of transmittal of the written report and recommendation. Alternatively, a Special Master may issue the report and recommendation to the Court, and the Court may directly issue an Order concerning the appointment.

**IT IS ORDERED** that the appraisers appointed by the parties are required to complete their work and submit any disputes to the Umpire no later than 60 days following the first Initial Disclosure Deadline under this Order (105 days following the filing of the defendant's

responsive pleadings). The appointed Umpire shall issue his report no later than 21 days from the submission of the dispute to the Umpire. This period may be modified by the Special Masters upon a showing of good cause.

SECTION 7.        CLERK OF COURT AND NOTICE

A Plaintiff filing a Hurricane Case should note on its cover letter, in *ALL CAPS* and *RED FONT*, that the matter is a "HURRICANE CASE". Each caption and on each pleading, "HURRICANE CASE" in bold print shall follow the docket number.   If a Special Master learns the Order has not been entered by the Clerk of Court, he shall serve it on the parties by email and may file proof of the same into the record at no cost.

In all subsequently filed Hurricane Cases, a copy of this order shall be served on the defendant(s) along with the Petition and Citation. The Clerk of Court shall include a reference that the Case Management Order is served with the Petition in the Citation issued. The Clerk of Court shall also provide a copy to the plaintiff by any authorized means.

The Clerk of Court shall transmit via email, at least weekly, to the Special Masters the docket numbers, case caption, and attorney contact information for any Hurricane Cases filed.

Any party making any filing or submitting any memoranda in a Hurricane Case subject to this Order shall serve a courtesy copy on the Special Masters in the same manner as enrolled counsel via email at HurricaneIda@colelaw.us and jlitchfield@berriganlaw.net.

SECTION 7.        COURT SUPERVISION

The Disaster Protocols and Streamlined Settlement Process shall, at all times, be subject to the ultimate control and supervision of the Court. This Case Management Order for Hurricane Cases is subject to modification pursuant to further orders of this Court. All provisions of this Order shall be applicable to all Hurricane Cases whether then pending or thereafter filed.

SO ORDERED on this ___ day of December, 2021, at New Orleans, Louisiana.

HON. ELLEN M. HAZEUR
District Judge, Division A

HON. RACHAEL JOHNSON
District Judge, Division B

HON. SIDNEY H. CATES IV
District Judge, Division C

HON. NAKISHA ERVIN-KNOTT
District Judge, Division D

9

**HON. OMAR MASON**
District Judge, Division E

**HON. JENNIFER M. MEDLEY**
District Judge, Division F

**HON. ROBIN M. GIARRUSSO**
District Judge, Division G

**HON. MONIQUE BARIAL**
District Judge, Division H

**HON. LORI JUPITER**
District Judge, Division I

**HON. NICOLE SHEPPARD**
District Judge, Division J

**HON. BERNADETTE D'SOUZA**
Chief Judge and District Judge, Division K

**HON. KERN A. REESE**
District Judge, Division L

**HON. PAULETTE R. IRONS**
District Judge, Division M

**HON. ETHEL S. JULIEN**
District Judge, Division N

IN RE: HURRICANE IDA CLAIMS : STATE OF LOUISIANA  FILED

 : PARISH OF ORLEANS APR 21  AM 11: 32

 : CIVIL DISTRICT COURT  CIVIL

DISTRICT COURT

## EXHIBIT "B"

## STIPULATION FOR MEDIATION

**IT IS HEREBY STIPULATED AND AGREED** by and between the undersigned parties:

1. The parties agreed to submit their dispute to mediation pursuant to the SSP, as specified in the Case Management Order (and any relevant supplements).

2. No party shall be bound by anything said or done during the mediation, unless either a written and signed stipulation is entered into or the parties enter into a written and signed agreement. The appointed neutral may meet in private conference with less than all parties. Information obtained by the neutral, either in written or oral form, shall be confidential and except as provided by Order of the Court it shall not be revealed by the neutral unless and until the party who provided the information agrees to its disclosure.

3. The mediation process, for the purpose of all federal and state rules protecting disclosures made during such conferences from later discovery or use in evidence, shall be considered a settlement negotiation. The entire procedure shall be confidential, and no stenographic or other record shall be made except to memorialize a settlement record. All communications, oral or written, made during the mediation by any party or a party's agent, employee, or attorney are confidential and, where appropriate, are to be considered work product and privileged. Such communications, statements, promises, offers, views and opinions shall not be subject to any discovery or admissible for any purpose, including impeachment, in any litigation or other proceeding involving the parties. However, any evidence which would otherwise subject to discovery or admissible shall not be excluded from discovery or admission in evidence solely because it has been referenced or discussed during this mediation process.

4. The appointed neutral and their agents shall enjoy the same immunity as judges and court employees, whether under federal or state law, for any act or omission in connection with the mediation, and from compulsory process to testify or produce documents in connection with the mediation.

5. The parties shall not:

1

   (i)   Call or subpoena the appointed neutral as a witness or expert in any proceeding relating to: the mediation, the subject matter of the mediation, or any thoughts or impressions which the appointed neutral may have about the parties in the mediation;

   (ii)  Subpoena any notes, documents or other material prepared by the appointed neutral in the course of or in connection with the mediation; and

   (iii) Offer into evidence any statements, views or opinions of the appointed neutral.

6.    The appointed neutral's services have been made available to the parties through the dispute resolution procedures sponsored by the Court. In accordance with those procedures, the appointed neutral represents that he or she has taken requisite oaths.

7.    Any party to this Stipulation is required to attend at least one session and as may be directed by the Special Masters as many other sessions thereafter as may be helpful in resolving this dispute.

8.    An individual with final authority to settle the matter and to bind the party shall attend the mediation on behalf of each party.


_____    _____
PLAINTIFF                                COUNSEL FOR PLAINTIFF

Date: _____                    Date: _____


_____    _____
DEFENDANT                                COUNSEL FOR DEFENDANT

Date: _____                    Date: _____

CONSENTED TO BY:


_____
NEUTRAL APPOINTED BY THE COURT

Date: _____

2.

IN RE: HURRICANE IDA CLAIMS : STATE OF LOUISIANA FILED

: PARISH OF ORLEANS 2021 APR 21 AM 11: 32

: CIVIL DISTRICT COURT
CIVIL
DISTRICT COURT

EXHIBIT "C"

## FORM FOR ISC DEMAND BY INSURED

| Category | Policy Limits | Damage(s) | Prior Payments | ISC DEMAND |
|---|---|---|---|---|
| A. Property | | | | |
| B. Other Structures | | | | |
| C. Personal Property | | | | |
| D. ALE | | | | |

Claim for Statutory Bad Faith Penalties on Late Prior Payments

Claim for Statutory Bad Faith Penalties on ISC Demand

Claim for Attorney's Fees

Total Claim for Other Damages (describe below):

_____

_____

_____

TOTAL

This demand is for the purposes of mediation only and is covered by mediation confidentiality. It may not be used for any other purpose. It is rescinded if the case does not settle as part of the SSP. The plaintiff reserves the right to modify the demand based on changes in circumstances or supplemental information. The plaintiff reserves the right to asserts claims for expert costs, judicial interest, and mental anguish / economic damages and related penalties pursuant to R.S. 22:1973 at any trial of this matter even if they are not listed above.

3

IN RE: HURRICANE IDA  CLAIMS        :          STATE OF LOUISIANA FILED

                               :          PARISH OF ORLEANS APR 21  AM 11: 32

                               :          CIVIL DISTRICT COURT

                                              CIVIL
                                     EXHIBIT "D"        DISTRICT COURT

### FORM FOR ISC DETAIL OF PAYMENTS BY INSURER

| Category | Policy Limits | Prior Payments | Date(s) |
|---|---|---|---|
| A. Property | _____ | _____ | _____ |
| B. Other Structures | _____ | _____ | _____ |
| C. Personal Property | _____ | _____ | _____ |
| D. ALE | _____ | _____ | _____ |
| OTHER: | _____ | _____ | _____ |

Other Detail:_____

TOTAL        _____        _____

4